UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| LESTER CANADA,<br><br>  Plaintiff<br><br>v.<br><br>ISIDRO BACA, et. al.<br><br>  Defendants | Case No.: 3:16-cv-00601-MMD-WGC<br><br>**REPORT & RECOMMENDATION OF U.S. MAGISTRATE JUDGE**<br><br>Re: ECF No. 25 |

This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR 1B 1-4.

Before the court is Defendants' motion for summary judgment. (ECF Nos. 25, 25-1 to 25-10, 27-1 to 27-5.) Plaintiff filed a response. (ECF No. 33.) Defendants filed a reply. (ECF No. 34.)

After a thorough review, it is recommended that the motion be granted in part and denied in part.

## I. BACKGROUND

Plaintiff is an inmate in the custody of the Nevada Department of Corrections (NDOC), proceeding pro se with this action pursuant to 42 U.S.C. § 1983. (Am. Compl., ECF No. 3.) The events giving rise to this action took place while Plaintiff was housed at Northern Nevada Correctional Center (NNCC). (*Id.*) Defendants are Gene Beitler, Jeffrey Howell, Isidro Baca, Ronald Shreckengost, and Romeo Aranas.

The Attorney General's Office accepted service for Aranas, Baca, Beitler, and Shreckengost, but not for Howell and filed his last known address under seal. The docket reflects

that Howell was served on February 21, 2018, but has not yet made an appearance or otherwise responded in this action. (*See* ECF Nos. 15, 19.) Despite this, the motion for summary judgment makes arguments that extend to both Beitler and Howell.

On screening, Plaintiff was allowed to proceed with the following claims: (1) Eighth Amendment deliberate indifference to his safety (failure to protect) against Beitler and Howell in Count I; and (2) Eighth Amendment deliberate indifference to serious medical needs against Baca, Shreckengost, and Aranas in Count II. (ECF No. 4.) The overcrowding claim in Count III was dismissed.

Plaintiff alleges that on February 13, 2016, he was housed in an open-bay dorm with a capacity of 120 inmates, but at that time held more than 130 adults. Beitler and Howell were the only officers assigned to protect the inmates in the unit. Howell knew inmates were regularly assaulting and robbing elderly black inmates, and laughed about it when speaking to a white inmate in another unit. Plaintiff, who was 58 years old at the time, was assaulted and robbed by two inmates in the unit. At the time of the assault, Beitler and Howell had left their assigned units to talk to each other outside, leaving Plaintiff and the others in the unit unprotected. Plaintiff alleges that he suffered a concussion, broken nose and lacerations on his head and face as a result of the assault, causing pain and partial paralysis along the left side of his neck and arm.

After the assault, Plaintiff avers that he sent institutional requests to Shreckengost, Aranas and Baca, informing them of his injuries, pain and suffering, and requested medical care, to no avail.

Defendants move for summary judgment arguing: (1) Plaintiff failed to exhaust his administrative remedies with respect to both claims; (2) the failure to protect claim fails because there is no evidence Beitler or Howell had knowledge of a risk to Plaintiff's safety; (3) the

deliberate indifference to serious medical needs claim fails because Plaintiff received medical treatment after the altercation; (4) Plaintiff may not pursue a claim for damages against the defendants insofar as they are sued in their official capacities; and (5) they are entitled to qualified immunity.

## II. LEGAL STANDARD

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994) (citation omitted). In considering a motion for summary judgment, all reasonable inferences are drawn in favor of the non-moving party. *In re Slatkin*, 525 F.3d 805, 810 (9th Cir. 2008) (citation omitted). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). On the other hand, where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

In evaluating whether or not summary judgment is appropriate, three steps are necessary: (1) determining whether a fact is material; (2) determining whether there is a genuine dispute as to a material fact; and (3) considering the evidence in light of the appropriate standard of proof. *See Anderson*, 477 U.S. at 248-50. As to materiality, only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment; factual disputes which are irrelevant or unnecessary will not be considered. *Id*. at 248.

In deciding a motion for summary judgment, the court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, 'it must come forward with evidence which would entitle it to a directed verdict if the evidence went

uncontroverted at trial.'… In such a case, the moving party has the initial burden of establishing the absence of a genuine [dispute] of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rest., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party cannot establish an element essential to that party's case on which that party will have the burden of proof at trial. *See Celotex Corp. v. Cartrett*, 477 U.S. 317, 323-25 (1986).

If the moving party satisfies its initial burden, the burden shifts to the opposing party to establish that a genuine dispute exists as to a material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party need not establish a genuine dispute of material fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (quotation marks and citation omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted). The nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *Id*. Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine dispute of material fact for trial. *Celotex*, 477 U.S. at 324.

At summary judgment, the court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine dispute of material fact for trial. *See Anderson*,

477 U.S. at 249. While the evidence of the nonmoving party is "to be believed, and all justifiable inferences are to be drawn in its favor," if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *Id*. at 249-50 (citations omitted).

### III. DISCUSSION

**A. Exhaustion**

Defendants argue that Plaintiff failed to exhaust his administrative remedies with respect to the claims asserted in this action. First, they contend he did not properly complete the grievance process through all levels with respect to the failure to protect claim. Second, they argue he never grieved the alleged failure to provide medical treatment.

**1. Exhaustion Standard**

The Prison Litigation Reform Act (PLRA) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). An inmate must exhaust his administrative remedies irrespective of the forms of relief sought and offered through administrative avenues. *Booth v. Churner*, 532 U.S. 731, 741 (2001).

"If undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment under Rule 56. If material facts are disputed, summary judgment should be denied, and the district judge rather than a jury should determine the facts [in a preliminary proceeding]." *Id*., 1168, 1170-71 (citations omitted).

Once a defendant shows that the plaintiff did not exhaust available administrative remedies, the burden shifts to the plaintiff "to come forward with evidence showing that there is something

in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Id*. at 1172 (citing *Hilao v. Estate of Marcos*, 103 F.3d 767, 778 n. 5 (9th Cir. 1996)); *Draper v. Rosario,* 836 F.3d 1072, 1080 (9th Cir. 2016)).

The Supreme Court has clarified that exhaustion cannot be satisfied by filing an untimely or otherwise procedurally infirm grievance, but rather, the PLRA requires "proper exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 89 (2006). "Proper exhaustion" refers to "using all steps the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." *Id*. (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)) (emphasis in original). Thus, "[s]ection 1997e(a) requires an inmate not only to pursue every available step of the prison grievance process but also to adhere to the 'critical procedural rules' of that process." *Reyes v. Smith*, 810 F.3d 654, 657 (9th Cir. 2016) (quoting *Woodford v. Ngo*, 548 U.S. 81, 90 (2006)). "[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones v. Bock*, 549 U.S. 199, 218 (2007).

**2. Exhaustion Within NDOC**

Exhaustion within NDOC is governed by Administrative Regulation (AR) 740. It requires an inmate to try to informally resolve an issue, and then proceed through three grievance levels: informal, first and second. (ECF No. 25-4.)

6

### 3. Plaintiff Failed to Exhaust Administrative Remedies for his Eighth Amendment Deliberate Indifference to Serious Medical Need Claim

Plaintiff concedes that he did not properly exhaust administrative remedies with respect to the deliberate indifference to serious medical needs claim asserted against Aranas, Baca and Shreckengost. Therefore, this claim should be dismissed. While a dismissal for failure to exhaust is usually without prejudice, AR 740 requires an inmate to grieve an issue within six months, and Plaintiff would not be able to properly exhaust his remedies as to this claim at this point. (*See* ECF No. 25-4 at 6.) Therefore, summary judgment is appropriate as to Count II.

### 4. Failure to Protect Claim

#### a. Grievance Documentation

Plaintiff submitted an informal level grievance, grievance number 20063025265, on May 26, 2016. (ECF No. 25-5 at 2[1]; ECF No. 33 at 31-33.) He stated that on February 13, 2016, he was assaulted by another prisoner with a broken broomstick, while another prisoner restrained him. (*Id*.) He claimed that there was no officer in the unit when this occurred. (ECF No. 25-5 at 2; ECF No. 33 at 31.) He went on to state that the prisoner who beat him told the officer (who was not at his post) that Plaintiff was trying to throw baby oil on him. (ECF No. 33 at 32.) That officer gave Plaintiff a general write up for fighting without looking at video. (*Id*.) No baby oil was ever found, and Plaintiff was the only one injured. (*Id*.) The officer did not believe Plaintiff's story, even though Plaintiff had to go to medical to have them look at his injuries. (*Id*.) He was charged with fighting and for his medical treatment. (*Id*.) He asserted there was not enough personnel

---

[1] Defendants only provide the first page of the grievance at all levels. Fortunately, Plaintiff provided the entirety of the grievance documentation. In the future, defense counsel is reminded to attach *all* of the relevant grievance documentation or risk having the motion denied as to the affirmative defense of exhaustion for failing to meet their burden of establishing a failure to exhaust.

assigned to the unit to keep this from occurring. (*Id*.) He asked to have the write up dismissed, the restitution order removed, and the money taken from him returned. (*Id*.) He also stated that the lack of adequate staff in the unit amounted to deliberate indifference. (*Id*.)

Plaintiff filed a first level grievance for 20063025265 on August 9, 2016. (ECF No. 25-5 at 4; ECF No. 33 at 39-41.) Plaintiff stated that the institution had 45 days to respond to an informal level grievance, and it had been 75 days and he had not received a response, so he was continuing to the next level. (ECF No. 25-5 at 4; ECF No. 33 at 39.) He stated that the informal level grievance was regarding the failure to protect, noting again that the officer in the unit left the unit unsupervised which allowed him to be assaulted. (*Id*.) He reiterated that after he was assaulted, the inmate told the officer that Plaintiff tried to throw baby oil on him, and Plaintiff received a write up for fighting. (ECF No. 33 at 40.) He stated that there were no papers to attach because the institution ignored the issue and refused to answer the informal level grievance. (*Id*. at 41.)

In response to the informal level grievance (20063025265), he was given an improper grievance memorandum dated August 2, 2016, but apparently received by Plaintiff on August 12, 2016. (ECF No. 25-5 at 3; ECF No. 33 at 30.) It checked the box that these specific claims or incidents were previously filed by the same inmate. It also stated that he was required to attach all documents to his grievance because he was appealing a disciplinary determination and did not attach all the forms. He was instructed to resubmit with all documents. (*Id*.) He was advised that a failure to resubmit within the prescribed timeframe constituted abandonment of the grievance. (*Id*.) He signed the memorandum and dated it August 12, 2016. (*Id*.)

Plaintiff filed a second informal level grievance, grievance 20063031392, dated August 13, 2016. (ECF No. 33 at 35-37.) This also grieved the failure to protect incident. (*Id.* at 35.) Plaintiff stated that he had submitted a grievance on this issue on May 26, 2016 (grievance 20063025265),

which asked for various forms of relief, including: dismissal of the write up, removal of the medical restitution, and that the money taken from him be returned. (*Id.* at 35-36.) He went on to state that under AR 740, the institution is supposed to respond to an informal level grievance within 45 days, and if they do not do so, the inmate may proceed to the next grievance level. (*Id.* at 36.) The institution did not timely respond to the informal grievance in grievance 200630252365, so Plaintiff submitted a first level grievance on August 9, 2016. (*Id.*) Once that first level grievance was picked up, Plaintiff claimed that the institution then sent him a notice rejecting the informal level grievance for frivolous reasons: it was a grievance appeal requiring the disciplinary (forms) and there was already an existing grievance regarding the same incident. (*Id.* at 36-27.) Plaintiff pointed out that this rejection was untimely, so his first level grievance was not invalid on this basis. (*Id.* at 37.)

     In response to the first level grievance (20063025265), he was given an improper grievance memorandum dated August 18, 2016, indicating it was the second rejection. (ECF No. 25-5 at 5; ECF No. 33 at 43.) Plaintiff was advised that he received a prior rejection notice on August 12, 2016, and while it was overdue, he now had the informal response to attach to the first level grievance. He was also told that the informal level grievance stated that he wanted the "OIC" dismissed, and if he was attempting a disciplinary appeal he needed to attach the disciplinary documents as well as past submissions and rejections. (*Id.*)

     Plaintiff submitted a second first level grievance dated September 3, 2016. (ECF No. 25-5 at 6; ECF No. 33 at 44-45.) He argued that the rejection was improper, and that the institution was outside the timeframe. (ECF No. 25-5 at 6; ECF No. 33 at 44.) He asked them to focus on the real issue—his being assaulted while there was no officer in the unit. (ECF No. 33 at 44-45.)

He was given a third improper grievance memorandum dated September 13, 2016. (ECF No. 25-5 at 7.) The memorandum stated: "Inmate Canada, you have stated that this is not a Disciplinary appeal but rather a 'failure to protect issue'. Therefore you must complete the Informal portion of this grievance. You may not proceed to the First Level without completing the Informal level. This is your third and final rejection." Plaintiff signed this memorandum and dated it September 20, 2016.

Plaintiff submitted a second level grievance on September 20, 2016. (ECF No. 25-5 at 8; ECF No. 33 at 50-52.) Plaintiff stated that his grievance had been improperly rejected for the third time. (ECF No. 25-5 at 8; ECF No. 33 at 50.) He disputed that he needed to add the disciplinary documentation. He also took issue with the rejection for moving to the first level without attaching a completed informal level grievance because they did not timely respond to the informal level grievance. He argued that he was allowed to move on to the first level.

In response, Plaintiff received a memorandum from Brian Ward dated October 5, 2016, advising the grievance was rejected for the fourth time; that he was given multiple chances to submit the grievance correctly, and no response would be forthcoming. (ECF No. 25-5 at 9; ECF No. 25-5 at 9.)

**b. Summary of Argument**

According to Defendants, Plaintiff filed an informal level grievance alleging he was assaulted because there was no officer in the unit. The grievance was rejected because Plaintiff failed to include all relevant documents. Instead of resubmitting the grievance correctly, Plaintiff proceeded to the first level. This was repeated, and Plaintiff received four rejections for an improper grievance. Therefore, they contend he did not properly exhaust his administrative remedies as to this claim.

Plaintiff does not dispute he must exhaust administrative remedies by proceeding through NDOC's grievance process before filing suit. (ECF No. 33 at 11.) He contends, however, that he submitted his first informal grievance on May 26, 2016, addressing the issue of failure to protect because Howell and Beitler were not at their assigned posts at the time of the assault. (ECF No. 33 at 12.) While the informal level grievance also addressed his writeup and requested that it be dismissed, the institution did not timely respond to his informal level grievance, so consistent with AR 740, he moved on to the first level. Therefore, he contends that he properly proceeded through the first and second levels and exhausted his administrative remedies.

### c. Analysis

Plaintiff filed an informal level grievance on May 26, 2016, raising the issue of the assault on February 13, 2016, the fact that the officers were not in the unit when this occurred, and that he received a write up as a result. He asked for several forms of relief including dismissal of the write up, removal of the restitution order, return of his money, and reiterated that he was asserting a deliberate indifference claim related to the fact that the officers were not in the unit when the assault occurred.

Under AR 740, the prison had 45 days to respond to the informal level grievance, and if they did not do so, Plaintiff could proceed to the next level. (ECF No. 33 at 58, 62.)

75 days went by and Plaintiff had not received a response, so on August 9, 2016, he proceeded with filing his first level grievance, as he was permitted to do under AR 740.

While the prison apparently prepared an improper grievance memorandum dated August 2, 2016, rejecting the informal grievance because a grievance had previously raised those issues and he did not attach the disciplinary documentation, Plaintiff did not receive it until August 12, 2016.

The court points out that nowhere in the grievance memorandum does it reference a grievance previously filed on this issue, and Defendants do not appear to argue now that this was actually the proper basis for the rejection of his grievance. Instead, the rejection focused on the failure to attach the disciplinary documentation at the informal level.

When he got no response, Plaintiff made clear in his first level grievance that he was grieving the failure to protect, and specifically stated that there were no papers to attach to the grievance. It was only after this that Plaintiff got the improper grievance memorandum rejecting the informal level grievance.

AR 740 does not address the unique situation of what occurs when the prison fails to timely respond to an informal level grievance and the inmate proceeds to the next level, and the prison subsequently rejects the informal level grievance, asserting reasons for the rejection that the inmate has seemingly rectified in the first level grievance that was submitted before he received the rejection. It seems that Plaintiff followed AR 740 in filing the first level grievance when he did not receive a timely response to the informal level. Again, he made clear in that first level grievance that the grievance was about the failure to protect and no documentation was relevant.

After receiving the first level grievance, the prison sent Plaintiff another improper grievance memorandum dated August 18, 2016, acknowledging that the response to the informal level grievance was overdue, but telling him that he now had the informal level response to attach to the first level grievance, and advised him that "[i]f [he was] attempting a Disciplinary appeal [he would] need to attach [his] Disciplinary documents as well as all past submissions and rejections." (ECF No. 33 at 43.) This was despite his statement in the first level grievance clarifying he was not attempting a disciplinary appeal and there was no relevant documentation.

Nevertheless, Plaintiff filed another first level grievance on September 3, 2016, reiterating that the issue was the alleged failure to protect. (ECF No. 33 at 44.)

He was given another improper grievance memorandum dated September 13, 2016, and this time the prison acknowledged his statement that this was not a disciplinary appeal, but still instructed to (re-)complete the informal portion of the grievance before he would be allowed to proceed to the first level.

AR 740 states that an informal level grievance must include all relevant factual allegations and documentation. (ECF No. 25-4 at 7.) The regulation does not specify what all relevant documentation entails. A first level grievance is to include "[a]ny additional relevant documentation[.]" ECF No. 25-4 at 9. Plaintiff made clear in both his first level grievances that the grievance was addressing the alleged failure to protect, and so there was no relevant documentation to include. Therefore, it appears the grievance was improperly rejected at the first level, and that his informal level grievance, to which he had belatedly received a rejection, was in fact proper. It is unclear why when he made clear that there was no relevant documentation to include the prison would make him start the grievance process over.

Plaintiff went ahead and filed a second level grievance on September 20, 2016.

The court finds Plaintiff did properly exhaust his administrative remedies consistent with AR 740, and that the prison imposed additional hurdles inconsistent with its own regulations that do not form a basis for concluding otherwise. Therefore, Defendants' motion for summary judgment should be denied to the extent it argues that Plaintiff failed to exhaust his failure to protect claim.

## B. Eighth Amendment Deliberate Indifference–Failure to Protect–Howell and Beitler

### 1. Standard

Under the Eighth Amendment prison conditions should not "involve the wanton and unnecessary infliction of pain" or be "grossly disproportionate to the severity of the crime warranting imprisonment." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Although prison conditions may be, and often are, restrictive and harsh, prison officials must "take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (citation and quotation marks omitted). "[P]rison officials have a duty ... to protect prisoners from violence at the hands of other prisoners." *Farmer*, 511 U.S. at 833 (citation and quotations omitted); *see also Cortez v. Skol*, 776 F.3d 1046, 1050 (9th Cir. 2015) (citing *Farmer*, 511 U.S. at 833). "Having incarcerated 'persons [with] demonstrated proclivity[ies] for antisocial criminal, and often violent, conduct,' having stripped them of virtually every means of self-protection and foreclosed their access to outside aid, the government and its officials are not free to let the state of nature take its course." *Farmer*, 511 U.S. at 833 (internal citations omitted). "Being violently assaulted in prison is simply not 'part of the penalty that criminal offenders pay for their offenses against society.'" *Id*. at 834 (citing *Rhodes*, 452 U.S. at 347).

To establish a violation of this duty, the prisoner must establish that prison officials were "deliberately indifferent" to serious threats to the inmate's safety. *Farmer*, 511 U.S. at 834. Under the deliberate indifference standard, a violation of the Eighth Amendment is only found when an objective and subjective component are met. *See id*. at 834.

When an inmate claims prison officials failed to take reasonable steps to protect him, he must show that "he is incarcerated under conditions posing a substantial risk of serious harm." *Id*. (citations omitted). This is a question of fact, and "must be decided by the jury if there is any room

14

for doubt." *Lemire v. Cal. Dep't of Corr. and Rehab.*, 726 F.3d 1062, 1075 (9th Cir. 2013) (citation omitted). "[T]o satisfy the objective prong, it is enough for the inmate to demonstrate that he was exposed to a substantial risk of some range of serious harms; the harm he actually suffered need not have been the most likely result among this range of outcomes." *Id.* at 1076 (citing *Gibson v. Cnty. Of Washoe, Nev.*, 290 F.3d 1175, 1193 (9th Cir. 2002)). It does not matter "whether a prisoner faces an excessive risk ... for reasons personal to him or because all prisoners in his situation face such a risk." *Farmer*, 511 U.S. at 843.

The inmate must also satisfy the subjective element. This means that the prison official being sued must have known of and disregarded the risk to the inmate's safety. *Farmer*, 511 U.S. at 837. "Mere negligence is not sufficient to establish liability." *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998).

**2. Analysis**

According to Defendants' motion, there is no evidence Howell or Beitler knew of and ignored a substantial risk to Plaintiff's safety. They claim that there is no allegation that the officers knew of or were warned that he might be attacked, and it is not enough to allege they were not at their posts and left him vulnerable. (ECF No. 25 at 6.) Instead, according to the records, Howell and Beitler were securing the Unit 10 entrance gate when they were approached by inmate McKinlay (who Plaintiff alleges was the aggressor in the assault). (ECF No. 25 at 2; ECF No. 25-1 at 3.) Howell's incident report from the incident states that McKinlay asked to talk to Beitler, and Howell observed that McKinlay's left check bone was slightly swollen and red. (ECF No. 25-1 at 3.) When Howell asked McKinlay about it, he initially said it was a pimple, and then asked Beitler to go talk to Plaintiff. (*Id.*) Howell eventually saw Plaintiff, whose face was swollen and he was bleeding with several lacerations, and medical was called. (*Id.*) Howell discovered a possible

weapon (a broken floor scrub head and handle). (*Id*. at 4.) That same day, a notice of charges for fighting and giving false information was issued to Plaintiff. (ECF No. 25-2 at 2.) A disciplinary hearing was held and Plaintiff was found guilty. (*Id*.) The disciplinary hearing records indicate that Plaintiff stated that the other inmate was "a good guy and didn't do anything wrong." (ECF No. 25-3 at 2.) Additionally, he said the two were friends and that he was "just playing" and didn't know how it escalated. (*Id*.)

In response, Plaintiff asserts that Howell and Beitler were the only officers assigned to protect the prisoners in the unit; they knew elderly black inmates were being assaulted and robbed and laughed about it with a white inmate; and, they abandoned their post and the assault occurred.

In his declaration, Plaintiff he states that on February 13, 2016, Howell and Beitler were the only officers assigned to protect inmates in Unit 10, and they abandoned their assigned areas inside the unit and went outside to talk, leaving the inmates in the unit unprotected. (Canada Decl., ECF No. 33 at 19.) While they were outside talking, Plaintiff was violently attacked by two inmates with broomsticks, and received a concussion, broken nose and lacerations on his head and face. (*Id*.)

He provides no actual evidence of how Beitler and Howell knew about elderly black inmates being assaulted and robbed in the unit, or that they laughed about it with another inmate. He does provide a statement in his declaration stating that on February 9, 2016, days before the assault, he sent inmate requests to both Beitler and Howell stating he was being threatened with physical violence if he was not moved out of the unit, and asked for them to move him to another unit before he gets hurt. He also provides the requests, and claims he received no response. (Canada Decl., ECF No. 33 at 19, 27, 28.)

Defendants' reply disputes the veracity of the requests Plaintiff claims he sent to Beitler and Howell on February 9. They point out that they are not signed by any NDOC staff, and there is no evidence the requests were ever actually sent.

They also argue that the exhibits are inadmissible hearsay. This is incorrect. The exhibits qualify as a statement offered against an opposing party, and therefore, are not hearsay under Federal Rule of Evidence 801(d)(2).

In the reply brief, Defendants dispute that Beitler or Howell abandoned their posts, and instead argue that they were securing the Unit 10 entrance gate at the time of the incident. Even if they did leave the unit unsupervised, they allege this is merely negligence and not deliberate indifference because there was no subjective awareness that Plaintiff faced a substantial danger as a result.

Here, there is a genuine dispute as to several material fact that makes summary judgment on the failure to protect claim inappropriate.

First, there is a dispute as to whether Plaintiff was subjected to a substantial risk of harm. The parties dispute whether Howell and Beitler abandoned their posts, as Plaintiff states in his declaration, or whether they were securing the unit entrance gate, as is advanced by Defendants. In addition, Plaintiff asserts that he was being threatened if he stayed in the unit, while Defendants point to the disciplinary hearing records which indicate Plaintiff stated he and the inmate he claims was the aggressor were friends and were just playing around.

Second, there is a dispute about what Howell and Beitler knew leading up to the attack. Defendants assert there is no evidence of any knowledge of a risk to Plaintiff's safety. In response, Plaintiff submitted evidence that he sent requests to Howell and Beitler days before the attack alerting them to a risk to his safety if he was not promptly removed from the unit. Defendants

dispute the veracity of Plaintiff's statements and the documents he submits in support of his position, but it is not the court's function to weigh evidence at the summary judgment stage. That is exclusively the province of the fact finder.

In sum, there are disputed facts as to whether Plaintiff was exposed to a substantial risk to his safety and whether Beitler and Howell had knowledge of this risk. Defendants argue that even if they abandoned their posts, this was merely negligence and not deliberate indifference; however, if the fact finder concludes the Defendants knew of the risk to Plaintiff and did in fact abandon their posts, this could amount to deliberate indifference.

Therefore, the motion for summary judgment should be denied with respect to the failure to protect claim.

**C. Official Capacity Damages**

Defendants argue that Plaintiff may not proceed against them with a claim for damages insofar as they are sued in their official capacities. (ECF No. 33 at 25.) Plaintiff states he will not address this issue. (ECF No. 33 at 15:19-21.)

"[F]ederal courts are barred by the Eleventh Amendment from awarding damages against state officials in their official capacities." *Snow v. McDaniel*, 681 F.3d 978, 991 (9th Cir. 2012) (citation omitted), *overruled on other grounds in Peralta v. Dillard*, 744 F.3d 1076 (9th Cir. 2014).

In sum, Defendants' motion should be granted insofar as Plaintiff seeks to proceed with a claim for damages against Howell and Beitler insofar as they are sued in their official capacities.

**D. Qualified Immunity**

Finally, Defendants argue they are entitled to qualified immunity. Given the court's conclusion that Plaintiff failed to exhaust administrative remedies with respect to the claim in Count II, the court need only address qualified immunity in the context of Count I.

Insofar as Count I is concerned, Defendants argue there was no constitutional violation because neither Beitler nor Howell had knowledge of a threat to Plaintiff's safety. In addition, they argue that even assuming a constitutional violation occurred, it is not clearly established that two individuals not directly involved or aware of an altercation could be liable for a failure to protect.

Plaintiff argues the court put this to rest when it allowed him to proceed with the claim on screening.

Preliminarily, the court's determination that Plaintiff stated colorable claims for relief on screening has no bearing on Defendants' qualified immunity argument. The screening inquiry merely looks at whether the Plaintiff has *alleged* sufficient facts to state a claim for relief.

The qualified immunity analysis consists of two steps: (1) viewing the facts in the light most favorable to the plaintiff, did the defendant violate the plaintiff's rights; and (2) was the right clearly established at the time the defendant acted. *See Castro v. County of Los Angeles*, 833 F.3d 1060, 1066 (9th Cir. 2016) (en banc), *cert. denied*, 137 S.Ct. 831 (Jan. 23, 2017).

Beitler and Howell are not entitled to qualified immunity. First, there is a question of fact regarding whether Defendants violated Plaintiff's rights. Viewing the facts in the light most favorable to Plaintiff, a fact finder could conclude that they knew of a risk to Plaintiff's safety and failed to act to prevent it when they allowed the unit to go unmonitored.

Second, the right was clearly established when they acted.

Defendants' argument on qualified immunity is premised on the court accepting only their version of events. If Plaintiff's version is believed, the law was clear that knowing of a risk to an inmate's safety and ignoring it or failing to act appropriately amounts to deliberate indifference.

Therefore, qualified immunity is not appropriate at this juncture.

///

## IV. RECOMMENDATION

IT IS HEREBY RECOMMENDED that the District Judge enter an order:

(1) **GRANTING** Defendants' motion with respect to the Eighth Amendment deliberate indifference to serious medical needs claim against Baca, Aranas and Shreckengost in Count II;

(2) **DENY** the motion as to the Eighth Amendment failure to protect claim against Beitler and Howell in Count I;

(3) **GRANT** the motion insofar as Plaintiff seeks to proceed with a claim for damages against Howell and Beitler in their official capacities in Count I; and

(4) **DENY** the motion insofar as it argues Defendants are entitled to qualified immunity.

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C), specific written objections to this Report and Recommendation within fourteen days of being served with a copy of the Report and Recommendation. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the district judge.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment by the district court.

DATED: December 26, 2018.

_William G. Cobb_
WILLIAM G. COBB
UNITED STATES MAGISTRATE JUDGE